```
Matthew G. Silva, plaintiff
DOC #957176 WA-217
Washington State Penitentiary
1313 N 13th Ave
Walla Walla, WA 99362
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| MATTHEW G. SILVA, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY UTTECHT, Coyote Ridge Corr. Center (CRCC) Superintendent; DAVID BAILEY, CRCC Associate Superintendent; DAVID SCANTLIN, CRCC Hearings Officer; DARRELL SCILLEY, CRCC Counselor; GARY FORD, CRCC Unit Supervisor; MICHAEL McCOURTIE and JACKQUELINE FLUAITT, CRCC Grievance Coordinators; TIM LANG, DOUGLAS CARR and JOHN DITTMAN, Assistant Attorneys General; <br><br> Defendants. | NO. 4:15-cv-05094-SMJ <br><br><br> FIRST AMENDED COMPLAINT |

I. JURISDICTION, PARTIES AND VENUE

1.1 This Court has jurisdiction over this action pursuant to 42 USC §§ 1331, 1343 and 1983, as well as 28 USC § 1367.

1.2 Plaintiff MATTHEW G. SILVA is a prisoner currently confined at the Washington State Penitentiary (WSP) in Walla Walla, Washington. Mr. Silva is a resident of Washington State and a United States citizen.

1.3 Defendant JEFFREY UTTECHT was the Coyote Ridge Corrections Center (CRCC) Superintendent at all times material to this complaint. As such, he was responsible for the policies, procedures and practices followed by his subordinates at CRCC. Mr. Uttecht is sued in his official and individual capacities, and under the doctrine of respondeat superior.

FIRST AMENDED COMPLAINT - 1/9    —ORIGINAL—

RECEIVED
5/10/16
CLERK, U.S. DISTRICT COURT

1.4 Defendant DAVID BAILEY was the CRCC Associate Superintendent at all times material to this complaint. As such, he was responsible for the policies, procedures and practices followed by his subordinates at CRCC. Mr. Bailey is sued in his official and individual capacities, and under the doctrine of respondeat superior.

1.5 Defendant DAVID SCANTLIN was a CRCC infraction Hearings Officer at all times material to this complaint. Mr. Scantlin is sued in this official and individual capacities.

1.6 Defendant DARRELL SCILLEY was a CRCC counselor at all times material to this complaint. As such, he was responsible for security classification, placement and transfer decisions for inmates held in the Intensive Management Unit (IMU). Mr. Scilley is sued in his official and individual capacities.

1.7 Defendant GARY FORD was a CRCC Custody Unit Supervisor (CUS) at all times material to this complaint. As such, he was responsible for the policies, practices and procedures of his subordinates at CRCC. Mr. Ford is sued in his official and individual capacities.

1.8 Defendants MICHAEL McCOURTIE and JACKQUELINE FLUAITT were CRCC Grievance Coordinators at all times material to this complaint. As such, they were responsible for addressing and processing inmate grievances, including but not limited to staff misconduct grievances. Mr. McCourtie and Ms. Fluaitt are sued in their official and individual capacities.

1.9 Defendant TIM LANG was the Supervisor of the Criminal Justice Division (CJD) of the Washington State Attorney General's Office (AGO) at all times material to this complaint. As such, he was responsible for the policies, practices and procedures of his subordinates at the AGO. Mr. Lang is sued in his official and individual capacities.

FIRST AMENDED COMPLAINT - 2

1.10 Defendants DOUGLAS CARR and JOHN DITTMAN were Assistant Attorneys General (AAGs) assigned to the CJD at all times material to this complaint. Mr. Carr and Mr. Dittman are sued in their official and individual capacities.

1.11 Mr. Silva reserves the right to amend the complaint to name John and Jane Doe defendants as they are identified during the discovery process.

1.12 The defendants, and each of them, acted under color of state law at all times material to this complaint.

1.13 Venue is proper in this Court because the acts and omissions complained of herein occurred in Franklin County, Washington, and because most of the defendants are residents there.

## II. OPERATIVE FACTS

2.1 Mr. Silva was held in DOC custody from 2005 to 2013. During that time, he was active in numerous court cases that exposed and attempted to hold accountable numerous Washington State employees for serious misconduct, civil rights violations and even criminal behavior.

2.2 During the time Mr. Silva was incarcerated, the AGO and DOC participated in a pattern and practice of harassing and retaliating against prisoners who exercised their right to access the court. The said pattern and practice was a known quantity to AGO and DOC employees, including each of the defendants herein, and it was used a liability avoidance tactic.

2.3 The defendants and their co-conspirators employed a variety of harassing and retaliatory tactics in the furtherance of the pattern and practice described in paragraph 2.2, above, including but not limited to: repeated cell searches; falsified, unnecessary or petty infractions; repeated transfers from cell-to-cell, unit-to-unit, prison-to-prison and state-to-state; seizure, withholding and refusal to ship prisoner legal materials (including files, papers, typewriters and witness/attorney contact

FIRST AMENDED COMPLAINT - 3

1  information) from one prison to the next; arbitrary, capricious and illegal
2  seizure, perusal, copying, withholding and theft of prisoner property,
3  including but not limited to legal materials; obstruction and harassment for
4  prisoners assisting other prisoners with legal matters; prohibition and
5  obstruction of prisoners documenting their claims by exchanging affidavits,
6  declarations and witness statements; denial of copying services for legal
7  papers to pursue court access; denial of basic hygiene items; and arbitrary,
8  capricious and unlawful deprivation of government benefits or privileges like
9  jobs, desirable cell-assignments, recreation and exercise, schooling and
10 training.

11     2.4 Defendants LANG, CARR and DITTMAN had a duty to obstruct AGO and DOC
12 employees who violated the law pursuant to Dunbar v. Board of Equalization,
13 140 Wash 433 (1926), RCW 43.01.020, RCW 43.10.020 and RCW 43.10.030(2).

14     2.5 In the furtherance of the conspiratorial liability avoidance strategy
15 described in paragraphs 2.2 and 2.3, above, the defendants and their co-
16 conspirators employed a variety of harassing and retaliatory tactics against
17 Mr. Silva, including but not limited to baseless infractions and sanctions, a
18 campaign of state/prison/unit/cell transfers, repeated segregation,
19 obstruction of court access, seizure and withholding of legal files, theft and
20 delay of legal mail, denial of government benefits, denial of services, denial
21 of access to the administrative grievance process, destruction of property
22 (including his typewriter), withholding of property and various other adverse
23 actions.

24     2.6 Between 2005 and 2013, the defendants and their co-conspirators
25 transferred, authorized and defended transferring Mr. Silva over ninety (90)
26 times from state-to-state, prison-to-prison, unit-to-unit and cell-to-cell.
27 One DOC staff person told Mr. Silva he was "on the circuit," which was DOC's
28

FIRST AMENDED COMPLAINT - 4

unofficial code for the pattern of retaliatory transfers described above. Another DOC staff person told Mr. Silva that "Headquarters knows who you are and if you continue to challenge the [DOC], your time will continue to be as difficult as possible."

2.7 Defendants UTTECHT, BAILEY, SCANTLIN, SCILLEY, FORD, McCOURTIE, FLUAITT, LANG, CARR and DITTMAN were on notice that Mr. Silva was being subjected to pattern retaliation and harassment but each one of them refused take any action to stop what was going on, thereby authorizing, condoning and acquiescing in it.

2.8 Subsequent to or contemporaneously with the notice described in paragraph 2.7, above, Mr. Silva was transferred to the CRCC IMU twice, demoted from minimum to close custody, transferred about seven (7) times between different prisons, units and cells, deprived of his legal files, subjected to falsified infractions and sanctions, searched repeatedly for no security-related purpose, required to strip naked in front of other inmates and subjected to various other adverse actions. The defendants, and each of them, knew about and participated in the said adverse actions by perpetrating, defending, upholding andr ignoring them. The events described in this paragraph occurred between June, 2012 and February, 2013.

2.9 During the time periods relevant to this complaint, DOC and the AGO had no policy, rule or regulation that prohibited their employees from retaliating against prisoners for court access and other free speech activities. Moreover, the said agencies failed to train their employees on what constituted unlawful retaliation, what civil rights prisoners have and how to avoid violating those rights. In fact, DOC had never found and the AGO had never admitted that any of their respective employees had ever retaliated against a prisoner in their respective histories. Rather, the AGO maintained

a blanket practice of indemnifying any and every DOC employee who was ever sued for allegedly violating any inmates' civil or legal rights, with the possible exception of a few staff rape cases.

2.11 None of the harassment and retaliatory actions taken against Mr. Silva furthered or were narrowly tailored to the furtherance of legitimate penological interests; rather, they were pretextual and designed to dissuade and punish him for pursuing First Amendment protected, free speech activities.

2.12 As a proximate result of the above adverse actions taken against Mr. Silva by the defendants and their co-conspirators, he suffered the loss of court cases, settled cases for pennies on the dollar (monetary loss), was emotionally and mentally traumatized, and suffered other injuries and damages to be proven at trial. Incorporated by reference as if fully set forth herein is Washington State Department of Licensing Uniform Commercial Code Financing Statement 2012-183-5782-9 (filed 7/1/12), which establishes the case names and numbers of the specific court actions that suffered damages as a proximate result of the defendants' and their co-conspirators' seizure, withholding and ultimate theft of Mr. Silva's legal files. There were at least twenty-seven (27) cases named in that agreement, with an agreed value of $185,185.18 each, for a total value of $5,000,000. Those cases had to be settled for $6,500 plus forgiveness of $16,000 in debt ($22,000.00), so Mr. Silva suffered $4,978,000.00 in damages as described above.

2.13 The defendants, and each of them, acted with callous or reckless disregard for Mr. Silva's rights, or with evil motive, when they perpetrated the acts and omissions complained of herein.

III. CAUSES OF ACTION

3.1 Paragraphs 1.1 through 2.13 are incorporated by reference as if fully set forth herein. When the defendants subjected Mr. Silva to adverse actions

because he engaged in protected court access and free speech activities, and when their acts and omissions did not advance nor were narrowly tailored to the advancement of legitimate penological interests, they violated his right to freedom from retaliation for exercising his First Amendment rights. Accordingly, Mr. Silva asserts this cause of action under 42 USC § 1983 for the violation of his civil rights, and he hereby seeks special findings and damages for each adverse act or omission taken against him by the defendants and/or their co-conspirators, including but not limited to punitive damages.

3.2 Paragraphs 1.1 through 2.13 are incorporated by reference as if fully set forth herein. In destroying Mr. Silva's property as described above, the defendants or their co-conspirators destroyed his typewriter. Mr. Silva hereby claims $5,000.00 for the loss of use and enjoyment of his typewriter due to negligence of the defendants or their co-conspirators.

3.3 Paragraphs 1.1 through 2.13 are incorporated by reference as if fully set forth herein. When the defendants seized, withheld and ultimately stole Mr. Silva's legal files, and when they affirmatively obstructed his access to the courts on his meritorious legal actions that were pending in various courts, they entered into an agreement, contract or covenant with him for the loss of court actions that proximately resulted therefrom. That agreement, contract or covenant was memorialized and undisputed as Washington State Department of Licensing Uniform Commercial Code Financing Statement 2012-183-5782-9 (filed 7/1/12), which lists the names and case numbers of the cases, as well as their values. Mr. Silva hereby sues for enforcement of and/or foreclosure on the debt resulting from the financing statement and related instruments.

FIRST AMENDED COMPLAINT - 7

3.4 Paragraphs 1.1 through 2.13 are incorporated by reference as if fully set forth herein. When the defendants subjected Mr. Silva to pattern abuse and psychological trauma as described above, they negligently and/or intentionally inflicted emotional distress on him, resulting in damages.

3.5 Paragraphs 1.1 through 2.13 are incorporated by reference as if fully set forth herein. When the defendants affirmatively and intentionally obstructed Mr. Silva's court access on the undisputedly nonfrivolous cases described above, they violated his right to access the courts without active interference. Accordingly, Mr. Silva asserts this cause of action under 42 USC § 1983 for the violation of his civil rights, and he hereby seeks special findings and damages for each case and/or cause of action that was damaged as described above, including but not limited to punitive damages.

## IV. REQUEST FOR RELIEF

4.1 Enter judgment against the defendants, and each of them jointly and severally, for money damages in an amount to be proven at trial.

4.2 Enter an injunction requiring the defendants to create policies, rules and regulations to protect Mr. Silva against retaliation and affirmative court access obstruction, including but not limited to training of their staff.

4.3 Grant Mr. Silva his costs and fees, including but not limited to attorneys fees and statutory attorneys fees.

4.4 Grant any other relief the Court deems just, equitable or warranted.

FIRST AMENDED COMPLAINT - 8

## V. VERIFICATION

The undersigned declares under penalty of perjury that the foregoing is true and correct.

RESPECTFULLY submitted this 8th day of May, 2016.

_____
MATTHEW G. SILVA, plaintiff

FIRST AMENDED COMPLAINT - 9